Carla E. JOOS and R. Scott Waterfall,
Plaintiffs–Appellants,

v.

INTERMOUNTAIN HEALTH CARE, INC.
and Metropolitan Life Insurance Company, Defendants–Appellees.

No. 93–4066.

United States Court of Appeals,
Tenth Circuit.

May 25, 1994.

Karra J. Porter (L. Rich Humpherys with her on the briefs), of Christensen, Jensen & Powell, P.C., Salt Lake City, UT, for plaintiffs-appellants.

Paul G. Huck of Metropolitan Life Ins. Co., New York City, for defendant-appellee Metropolitan Life Ins. Co.

Gary L. Johnson (Curtis J. Drake with him on the brief), of Richards, Brandt, Miller & Nelson, Salt Lake City, UT, for defendant-appellee Intermountain Health Care, Inc.

Before LOGAN, McKAY, and BALDOCK, Circuit Judges.

McKAY, Circuit Judge.

This is an appeal from a federal district court's Order which dismissed Plaintiffs' lawsuit and imposed sanctions on Plaintiffs under Federal Rule of Civil Procedure 11. The

following is a summary of the complex factual and procedural events that gave rise to this appeal.

On December 8, 1987, Plaintiff Carla Joos gave birth to a dependant male child, Jordan Joos, at McKay Dee Hospital ("McKay Dee"), a division of Defendant Intermountain Health Care ("IHC"). Due to complications, Jordan Joos suffered serious medical complications and was admitted to the Newborn Intensive Care Unit at McKay Dee. Medical expenses approximating $644,102 were incurred at McKay Dee on behalf of Jordan Joos. At the time of Jordan's birth and subsequent medical attention, the Joos family was covered by an insurance policy issued by Defendant Metropolitan Life Insurance Company ("Metropolitan") through an employee benefit plan governed by ERISA. The policy's coverage included the medical expenses incurred by the Joos family at McKay Dee.

Metropolitan initially refused to pay health insurance benefits to or on behalf of the Joos family. IHC subsequently notified Carla Joos that she remained responsible for payment of the medical expenses and that IHC was asserting a lien in the amount of the unpaid expenses. In December of 1988, Ms. Joos retained Mr. Waterfall, an attorney, to assist her in seeking recovery of the insurance benefits from Metropolitan to pay IHC's bills. Ms. Joos entered into an attorney fee agreement with Mr. Waterfall which required her to pay him one-third of any amount ultimately paid by Metropolitan. Whether Mr. Waterfall entered into a similar agreement with IHC, through an implied or oral contract, is disputed by the parties and is not relevant to our decision today.

On January 12, 1989, Plaintiff Joos, assisted by her attorney, Mr. Waterfall, instituted an action (hereinafter "the ERISA action") against Metropolitan in the Second Judicial District Court of Utah, and Metropolitan promptly removed the case to the United States District Court for the District of Utah. Shortly thereafter, Metropolitan agreed to pay IHC $503,000 in full settlement of Carla Joos' debt. The district court ordered Metropolitan to also pay $13,250 to Mr. Waterfall, the attorney for the prevailing party in the ERISA action, under the attorney's fees

provision in ERISA, 29 U.S.C. § 1132. After the lawsuit, Mr. Waterfall attempted to collect from IHC the difference between his court award in the ERISA action and the amount he would have been paid under his alleged one-third contingency fee agreement with IHC. IHC refused to pay, and Plaintiffs promptly filed suit against IHC and Metropolitan in Utah state court, alleging various state law claims including breach of contract by IHC and improper interference with a contractual relationship by Metropolitan.

Although no diversity existed between the parties, Defendants filed a timely notice of removal to the federal district court in Utah. Defendants contended that the federal court had jurisdiction under ERISA because that federal statute preempted Plaintiffs' ability to bring their state law causes of action. Once the case was removed to the federal court, Defendants filed a motion to dismiss and/or for summary judgment arguing that Plaintiffs' claims were preempted and invalidated by ERISA. Plaintiffs then filed a timely motion to remand to the state court, arguing that ERISA did not preempt their state lawsuit and that the federal court therefore had no jurisdiction. On October 15, 1992, after hearing oral argument, the district court denied the Plaintiffs' motion for remand. Recognizing that its decision on the remand motion—in particular, its ruling that the claims were preempted by ERISA—was potentially dispositive of Plaintiffs' claims on their merits, the district court allowed Plaintiffs thirty days to file a response to Defendants' motion to dismiss and/or for summary judgment if they felt their claims remained viable in light of the ruling. After the Plaintiffs filed a response, the district court issued a one-page Order granting Defendants' motion to dismiss and/or for summary judgment. The district court held that the breach of contract action and the other state claims were preempted, and thus invalidated by ERISA. Having held ERISA applicable to the present suit, the district court ordered Plaintiffs to pay attorney's fees to Defendants under both ERISA and Rule 11. It is from this final order that Plaintiffs appeal.

The issue in this case can be rather simply stated: whether Plaintiffs' state lawsuit involving state causes of action is voided by ERISA's preemption provision, 29 U.S.C. § 1144(a). This section preempts all actions that "relate to" an ERISA action. 29 U.S.C. § 1144(a). Although the scope of ERISA preemption under § 1144(a) is broad, the Tenth Circuit has held that a state-law based cause of action may be preempted only if "the factual basis of the cause of action involves an employee benefit plan." *Monarch Cement Co. v. Lone Star Indus., Inc.*, 982 F.2d 1448, 1452 (10th Cir.1992) (quoting *Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 509 (10th Cir.1991)). Furthermore, "[s]tate actions which affect plans in too tenuous, remote, or peripheral a manner will not be preempted as a law relating to the plan. ERISA does not preempt claims that are only tangentially involved with a benefit plan." *Hospice of Metro–Denver, Inc. v. Group Health Ins. of Okla., Inc.*, 944 F.2d 752, 754 (10th Cir.1991) (citations and internal quotations omitted). It is clear, therefore, that for ERISA's preemption mechanisms to be triggered, the state lawsuit arising out of the original ERISA action must, in more than a remote way, involve and affect the ERISA *benefit plan* that was construed in the first action. If elements of the ERISA plan are inherently part of the factual basis of the second lawsuit, the lawsuit is preempted in part because of the possibility of inconsistent or contradicting interpretations. *Hospice*, 944 F.2d at 754. This fact led this court to conclude that "[w]hen a state law 'does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the [law] has some economic impact on the plan does not require that [the law] be invalidated.'" *Id.* (quoting *Rebaldo v. Cuomo*, 749 F.2d 133, 139 (2d Cir.1984) (alterations in original), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985).

It is not always easy to determine in advance whether a state lawsuit will require interpretation of or otherwise significantly affect an ERISA benefit plan. However, we do not see how the suit filed by Plaintiffs will in any way involve the benefit plan that was construed in the original ERISA action. Mr.

Waterfall brought suit against IHC for breach of contract and against Metropolitan for interfering with his contractual relationships with both IHC and Ms. Joos. Ms. Joos' claim was against IHC only, alleging that IHC's unlawful conduct subjected her to emotional distress and financial ruin. The causes of action brought by Mr. Waterfall arise out of IHC's refusal to pay the one-third contingency fee from its alleged contract with him. The alleged contingency fee agreement between Mr. Waterfall and IHC just happened to arise out of a previously litigated ERISA case, but that fact has no impact on the legal aspects of Plaintiffs' claims. The cause of action brought by Ms. Joos against IHC will turn on IHC's internal policies and the manner with which it dealt with Ms. Joos, a debtor facing financial ruin and the possible loss of her child. The primary issues to be resolved in the state case will be whether a contingency fee agreement existed between Mr. Waterfall and IHC, whether Metropolitan interfered with that agreement or Mr. Waterfall's relationship with Ms. Joos, and whether Ms. Joos suffered emotional distress as a result of IHC's actions. The fact that the ERISA plan covered Ms. Joos, her family, and the medical procedures administered will be taken as a given in that lawsuit and cannot be relitigated. We hold, therefore, that Plaintiffs' lawsuit filed in the Utah state court is not preempted by ERISA, and accordingly, the case was improperly removed because the Defendants have not asserted a valid basis for federal jurisdiction.

The theory of ERISA preemption urged by Defendants and adopted by the district court suggests that attorneys who represent plaintiffs in ERISA cases must accept as their total fee the amount that the court awards the attorney under the ERISA attorney fees' provision if the client prevails. However, if the preemption provisions in ERISA were construed to invalidate claims brought by attorneys against their clients for failure to satisfy a fee agreement, then attorneys would be discouraged from representing those that ERISA was intended to protect. Indeed, an attorney could never bring a breach of contract action against his client

during the original ERISA action, because not only would such an action disqualify the attorney, but the case would not yet be ripe because the fees would not yet have become due. If the attorney waits until after the ERISA case and then brings suit for breach of contract, his claim would be preempted under ERISA. Therefore, under Defendants' theory, an attorney is in the position of accepting as his client a plaintiff in an ERISA benefits case knowing that if his client does not prevail, he may receive no fee and have no legal recourse. The attorney will also know that if his client does prevail, he may receive some fee, but the amount of that fee will· be unknown to him until after the lawsuit is finished, and will be completely at the discretion of the court.

Adopted in part to promote the enforcement of ERISA, it is clear that the attorney fees' provision of that statute was not intended to place a cap on the amount that a plaintiff's attorney may collect for his efforts. The award of attorney's fees in an ERISA case is simply intended to offset some or all of the plaintiff's costs because of the behavior of the defendant, and it in no way affects the contractual relationship between a plaintiff and his attorney. *See Drennan v. General Motors Corp.*, 977 F.2d 246, 254 (6th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993). *See also Venegas v. Mitchell,* 495 U.S. 82, 86–87, 110 S.Ct. 1679, 1682–83, 109 L.Ed.2d 74 (1990) (construing analogous fee-shifting provision in civil rights statute).

In sum, we hold that ERISA does not preempt Plaintiffs' state law claims and that Defendants have not alleged a sufficient basis for federal jurisdiction to support their removal to the federal district court. Obviously, our disposition mandates reversal of the Rule 11 sanctions. We express no opinion on the merits of Plaintiffs' state law claims. Likewise, we express no opinion on the question of issue and claim preclusion raised by Defendants. Defendants' affirmative defenses cannot vest this court with jurisdiction. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986).

The Order of the district court is VACATED, and the case is REMANDED to the district court with instructions to REMAND to the state court from which this case was improperly removed.